UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTEGRITY SOCIAL WORK SERVICES, LCSW, LLC, | |
| Plaintiff, | Civil Action No. 20-cv-118 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| ALEX M. AZAR II, *Secretary, U.S. Department of Health and Human Services*, *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff, Integrity Social Work Services LCSW, LLC ("ISWS"), initiated this suit against defendants U.S. Department of Health and Human Services ("HHS"), HHS' Secretary, and Safeguard Services, LLC ("Safeguard"), for violation of plaintiff's due process rights under the Fifth Amendment of the United States Constitution, seeking "the temporary suspension" of the process for recoupment of Medicare overpayments and "reinstatement of Medicare payments until ISWS is provided with a hearing" to review defendants' Medicare overpayment determination under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, ("Medicare Act").  Compl. "Prayer for Relief," ¶ 2, ECF No. 1.  Defendants now move to dismiss or, in the alternative, transfer plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(3), on grounds that plaintiff has failed to comply with the Medicare Act's venue requirements.  Defs.' Mot. to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue ("Defs.' Mot."), ECF No. 7.  For the reasons explained below, venue is improper in this district, but rather than dismissal, this case will be transferred to a judicial district where venue is proper.

1

I.     BACKGROUND

Plaintiff, a New York professional services limited liability company operating in Richmond County in the State of New York, provides clinical social work and psychotherapy services to homebound Medicare beneficiaries in New York City.  Compl. ¶¶ 2, 10.  "[I]ts entire revenue stream derives from Medicare reimbursements."  Pl.'s Mem. Pts. & Auth. In Opp'n To Defs.' Mot.  ("Pl.'s Opp'n") at 5, ECF No. 8 (citing Compl. ¶ 47).

In late February of 2018, Safeguard, which is a private company contracted under the Medicare Integrity Program, 42 U.S.C. § 1395ddd, as a Unified Program Integrity Contractor ("UPIC") to investigate suspected fraud, waste and abuse in Medicare, began a post-payment review of claims for psychotherapy services submitted by plaintiff between January 1, 2017 and February 28, 2018.  Compl. ¶ 34.  In response to successive requests from Safeguard, plaintiff submitted the medical records associated with 101 claims paid during this period to enable Safeguard to compile a statistically-valid random sample for analysis.  *Id.* ¶ 35.  After analyzing this sample, Safeguard determined that "100% of [plaintiff's] claims should have been denied," *id.* ¶ 37, and that plaintiff had been overpaid on these 101 claims in the amount of $35,946.88, *id.*  Extrapolating from the sample, Safeguard then determined "a total overpayment amount of $979,040.40" for all the claims under post-payment review.  *Id.*

Plaintiff appealed this overpayment determination through the first two of four levels of administrative review, and the overpayment determination was upheld.  *Id.* ¶¶ 8, 39–40.[1]  Upon reaching the third level, which provides for a hearing before an administrative law judge

---

[1]        The four levels of review are: "(1) a redetermination by a MAC [Medicare Administrative Contractor]; (2) reconsideration of the MAC's redetermination by a qualified independent contractor ("QIC"); (3) a *de novo* hearing of the QIC's decision before an ALJ; and (4) review of the ALJ's decision by the Medicare Appeals Council."  Defs.' Mem. Pts.& Auth. Supp. Defs.' Mot. ("Defs.' Mem.") at 4, ECF No. 7-1 (citing 42 U.S.C. § 1395ff; 42 U.S.C. §§ 405.900–405.1140.).

("ALJ"), plaintiff was informed that the earliest available hearing date was "approximately three years from the date of ISWS's request," which means "ISWS effectively cannot obtain an ALJ hearing." *Id.* ¶ 8; *see id.* ¶ 41 (stating "ISWS submitted a Request for a Medicare Hearing with an ALJ on October 7, 2019" and "is informed and believes that the earliest available hearing date is approximately three years from the date the request was made."). This delay presents existential consequences for plaintiff. According to plaintiff, the recoupment process on the overpayment amount, which has already begun, "will result in ISWS permanently closing its business before ISWS can be heard before an ALJ." *Id.* ¶ 41.

On January 15, 2020, while still awaiting an ALJ hearing, plaintiff filed this lawsuit asserting two procedural and substantive due process claims based on allegations that defendants deprived plaintiff of property and liberty interests in violation of the Fifth Amendment. *Id.* ¶¶ 50–59. Defendants filed the pending motion to dismiss on March 17, 2020, which motion is now ripe for review.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss for improper venue. *See* FED. R. CIV. P. 12(b)(3). Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case, which is filed "in the wrong division or district." 28 U.S.C. § 1406(a). Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'. . . in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 55 (2013). The Supreme Court has explained that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.*

To prevail on a motion to dismiss for improper venue, "the defendant must present facts that will defeat the plaintiff's assertion of venue," *Lemon v. Kramer*, 270 F. Supp. 3d 125, 138 (D.D.C. 2017) (quoting *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013)), and must provide "sufficient specificity to put the plaintiff on notice of the defect," 14D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3826 (4th ed. 2020). Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is "the plaintiff's obligation to institute the action in a permissible forum." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also* WRIGHT ET AL., *supra*, § 3826 ("[W]hen the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue[,] . . . . consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted.").

In reviewing a motion for improper venue, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (quoting *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011)).  The court may resolve the motion on the basis of the complaint alone, or, as necessary, examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff.  *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17–18 (D.D.C. 2013); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  "The court need not, however, accept a plaintiff's legal conclusions as true." *Lemon*, 270 F. Supp. 3d at 139 (citing *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001)).

4

## III.    DISCUSSION

Plaintiff cites as bases for the exercise of jurisdiction 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity jurisdiction), Compl. ¶¶ 13–17, and asserts that venue "is proper" here, pursuant to the general venue provisions of 28 U.S.C. § 1391(b) and (e), and 5 U.S.C. § 703, *id*. ¶ 18.[2]  Defendants correctly point out that these general venue provisions "do not apply when excluded by law or special statutory review."  Defs.' Mem. Pts. & Auth. Supp. Defs.' Mot. ("Defs.' Mem.") at 9, ECF No. 7-1 (citing *Michener v. Saul*, No. 18-cv-1657, 2019 WL 3238582, at *3 (D.D.C. July 18, 2019)); *see also Save Our Cumberland Mountains, Inc. v. Lujan*, 963 F.2d 1541, 1551 (D.C. Cir. 1992) (finding that special forum requirement in the Surface Mining Control and Reclamation Act excluded alternate, more general bases for establishing venue and explaining, "'a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute.'" (quoting *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984)).

Defendants contend that none of the jurisdictional bases relied upon by plaintiff applies because "the only possible basis for jurisdiction is 42 U.S.C. § 405(g)," Defs.' Mem. at 1, the statute governing judicial review of benefits determinations under the Medicare Act.  Plaintiff disputes application of the venue requirement of Section 405(g) since the claims allege constitutional violations rather than entitlement to benefits.  Pl.'s Opp'n at 2–3.  Even if the claims do "arise under" the Medicare Act, plaintiff further argues that the requirements of Section 405(g) should be waived under either the "collateral claim" or "'no review'

---

[2]    The complaint also cites 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act) for jurisdiction, Compl. ¶ 17, but the law is well-settled that "the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is procedural only.'" *Vaden v. Discover Bank*, 556 U.S. 49, 70, n.19 (2009) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

exception[s]." *Id*. at 8.  As explained below, resolution of this dispute is dictated by binding precedent favoring defendants' better arguments.

### A.        Plaintiff's Claims Arise Under the Medicare Act and Section 405(g) Applies

Plaintiff vigorously contests that the Medicare Act's venue provision applies since no claim "challenge[s] the Secretary's determination of ISWS's entitlement to Medicare benefits." *Id*. at 7.  Instead, both claims arise under the Fifth Amendment and seek procedural protection for plaintiff's "protected property and liberty interests in maintaining its business and earning a living," predicated on allegations that defendants "deprived ISWS of that right by forcing it out of business before it can access available administrative remedies." *Id*.  In other words, plaintiff describes this lawsuit as a Fifth Amendment challenge to the administrative review process surrounding a Medicare overpayment determination, not a statutory challenge under the Medicare Act to the determination itself.  This characterization of the pending claims, though accurate, does not lead to plaintiff's preferred outcome here.

The Medicare Act, 42 U.S.C. § 1395ii, "incorporates the judicial review scheme set forth in 42 U.S.C. § 405(h) and elsewhere in Title II of the Social Security Act ["SSA"], mandating that these provisions 'shall also apply' to the Medicare Act 'to the same extent as they are applicable with respect to' Title II, with any reference to the 'Commissioner of Social Security' deemed a reference to the HHS Secretary as well." *Porzecanski v. Azar*, 943 F.3d 472, 480–81 (D.C. Cir. 2019) (quoting 42 U.S.C. § 1395ii) (footnote omitted).  The SSA's Section 405(h) "precludes federal-question jurisdiction in an action challenging denial of claimed [Social Security] benefits," *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976); *see also Weinberger v. Salfi*, 422 U.S. 749, 756–57 (1975), and thus also bars general federal question jurisdiction to challenge denial of benefits under the Medicare Act, *see Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) (finding no jurisdiction in case involving nursing-home

restrictions imposed under the Medicare Act because "§405(h), as incorporated by § 1395ii, bars federal-question jurisdiction here.").  As the D.C. Circuit has explained, Section 405(h) "divests the district courts of federal-question jurisdiction 'on any claim arising under' Title II of the Social Security Act, and it bars any 'decision of the Commissioner of Social Security' from being judicially reviewed, 'except as herein provided' in other Title II provisions."  *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018) (quoting 42 U.S.C. § 405(h)).

While Section 405(h) bars general federal-question jurisdiction, the SSA contains its own jurisdictional provision, 42 U.S.C. § 405(g), which "provides for judicial review of Social Security Act claims, thus creating the exception 'herein provided.'"  *Id.* (quoting 42 U.S.C. § 405(h)).  Accordingly, "§405(g), to the exclusion of 28 U.S.C. § 1331 [federal-question jurisdiction], is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."  *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (quoting *Salfi*, 422 U.S. at 760–61).

In determining whether a particular claim "arises under" the SSA or Medicare Act, the Supreme Court has construed the phrase "quite broadly to include any claims in which 'both the standing and the substantive basis for the presentation' of the claims is the Social Security Act." *Id.* (quoting *Salfi*, 422 U.S. at 761).  In *Ringer*, for example, the Court held that a challenge to "the policy of the Secretary of Health and Human Services [] as to the payment of Medicare benefits for a [particular] surgical procedure," *id.* at 604–05, arose under the Medicare Act and could only be brought pursuant to Section 405(g), even though the relief "sought [was] only declaratory and injunctive relief and not an actual award of benefits," *id.* at 615.  The plaintiffs' challenge to the agency's policy was found to be "inextricably intertwined" with their "claims for benefits" under the Medicare Act.  *Id.* at 614.  Likewise, in *Illinois Council*, the Court held that a challenge to "certain Medicare-related regulations" governing nursing homes arose under

the Medicare Act, though the claims asserted were violations of multiple statutes and the

Constitution.  *Ill. Council*, 529 U.S. at 5.

Notably, the Supreme Court has rejected efforts to distinguish between "procedural" and

"substantive" challenges to benefits determinations in this context.  In *Salfi*, facing a

constitutional challenge to "duration-of-relationship Social Security eligibility requirements,"

422 U.S. at 752–53, the Court held that the complaint arose under the SSA because that statute

"provide[d] both the standing and the substantive basis for the presentation of [plaintiffs']

constitutional contentions," *id*. at 761.  Similarly, in *Ringer*, the Court rejected the contention

that a challenge to the procedures governing eligibility for a particular Medicare benefit arose

under the Administrative Procedure Act rather than the Medicare Act.  *Ringer*, 466 U.S. at 622

("As we have already noted earlier … the Court rejected the argument that the claimant in *Salfi*

could bring his constitutional challenge to a Social Security Act provision in federal court

pursuant to § 1331 because the claim was 'arising under' the Constitution, not the Social

Security Act.").  The Court acknowledged that "Ringer's claim may well 'aris[e] under' the APA

in the same sense that Salfi's claim arose under the Constitution, but we held in *Salfi* that the

constitutional claim was nonetheless barred by § 405(h)."  *Id.* (alteration in original).  Thus, as

later summarized in *Illinois Council*, the jurisdictional bar in Section 405(h) "applies

'irrespective of whether resort to judicial processes is necessitated by discretionary decisions of

the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory

restrictions.'"  *Ill. Council*, 529 U.S. at 11 (quoting *Salfi*, 422 U.S. at 762).  The bar "d[oes] not

'preclude constitutional challenges,' but simply 'require[s] that they be brought' under the same

'jurisdictional grants' and 'in conformity with the same standards' applicable 'to

nonconstitutional claims arising under the Act.'"  *Id*. (quoting *Salfi*, 422 U.S. at 762).

Applying these standards, plaintiff's claims "arise under" the Medicare Act.  As in *Salfi*, a denial of benefits under the Medicare Act "provides both the standing and substantive basis for the presentation of [the plaintiff's] constitutional contentions."  *Salfi*, 422 U.S. at 761.  Assuming as true that plaintiff's "protected interests in maintaining its business and earning a living" are threatened by long delay in the applicable administrative review process, Pl.'s Opp'n at 7, those interests depend ultimately on payments made pursuant to the Medicare Act.  Apart from the unfavorable overpayment determination still subject to administrative review, no separate liberty or property interest is at stake in this lawsuit.  In this sense, as in *Ringer*, plaintiff's constitutional claims are "inextricably intertwined" with the benefit claims under the Act.  *Ringer*, 466 U.S. at 614.  The fact that plaintiff seeks "declaratory and injunctive relief and not an actual award of benefits" simply does not obviate application of the Medicare Act's special jurisdiction statute. *Id*. at 615.

Plaintiff's additional claims concerning the HHS Secretary's allegedly unlawful delegation of power to private contractors similarly "arise under" the Medicare Act.  In plaintiff's view, defendants violated plaintiff's due process rights by "improperly delegate[ing] executive and judicial functions to private contractors," Compl. ¶ 42, and by "giv[ing] [Safeguard] unconstitutional rulemaking authority," *Id*. ¶ 43; *see also id*. ¶ 44 ("the Secretary's use of private contractors in policing Medicare claims and as reviewing panels in the subsequent appeals process is an unconstitutional delegation of rulemaking, enforcement, and judicial authority.").  These challenges also arise under the Medicare Act, which expressly authorizes the Secretary to rely on private contractors.  *See* 42 U.S.C. §§ 1395u (authorizing private contracts with MACs for the administration of Part B insurance benefits), 1395kk-1 (authorizing Secretary to contract with MACs); 42 U.S.C. § 1395ddd (authorizing Secretary to rely on private

contractors for post-payment review under the Medicare Integrity Program).  Indeed, the process by which Safeguard extrapolated from a sample of plaintiff's claims to determine a total overpayment amount is authorized by 42 U.S.C. § 1395ddd(f)(3).  Plaintiff concedes as much, stating "UPICs have the authority to make 'determinations as to whether payment should not be, or should not have been made."  Compl. ¶ 5 (quoting 42 U.S.C. § 1395ddd(b)(3)).  As defendants correctly argue, Defs.' Reply Pl.'s Opp'n Defs.' Mot. ("Defs.' Reply"), at 5, ECF No. 9, plaintiff's unlawful delegation claims challenge the constitutionality of the Act and its implementation by the Center for Medicare and Medicaid Services ("CMS"), a division of HHS. As in *Illinois Council*, a challenge to "allegedly unconstitutional statutory restrictions" in the SSA and Medicare Act is still subject to the jurisdictional bar in Section 405(h).  *Ill. Council*, 529 U.S. at 11 (internal citation omitted).

Since plaintiff's constitutional claims "arise under" the Medicare Act, which bars general federal-question jurisdiction, jurisdiction is only available under Section 405(g).[3]  As relevant here, Section 405(g) contains a special venue provision requiring that appeals of determinations made under the Act "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia."  42 U.S.C. § 405(g).  Plaintiff's principal place of business is in "Richmond County in the State of New York," Compl. ¶ 10; *see also* Pl.'s

---

[3]      This conclusion holds for both the HHS Secretary and Safeguard since, as defendants correctly point out, Medicare contractors, like Safeguard, "act as agents of HHS and thus the Government is the real party in interest." Defs.' Mem. at 10, n.2.  *See Pine View Gardens, Inc. v. Mut. Of Omaha Ins. Co.*, 485 F.2d 1073, 1075 (D.C. Cir. 1973) (finding diversity jurisdiction unavailable in suit against Medicare contractor since "[t]he [Medicare Act] and regulations, of which we may take judicial notice, make it clear that [the contractor] is an agent for the Government").

Opp'n at 7, which falls within the Eastern District of New York.  Thus, venue in the District of Columbia is improper under Section 405(g).

### B.      No Exception to Section 405(g) Applies

Plaintiff persists that even if this lawsuit arises under the Medicare Act, the "collateral claims" or "no review" exceptions apply to avoid the venue requirements of Section 405(g).  *Id.* at 8.  These exceptions are to no avail.

#### 1.      *Collateral Claim Exception*

Citing *Mathews v. Eldridge*, 424 U.S. at 330, plaintiff argues that "Section 405(g) does not apply to ISWS's claims because they are entirely collateral to its substantive claims for entitlement."  Pl.'s Opp'n at 7.  Plaintiff's reliance on *Eldridge* is misplaced.

*Eldridge* addressed a constitutional challenge to a denial of social security benefits made without an administrative hearing.  424 U.S. at 323.  The Supreme Court found that Section 405(g) contains a nonwaivable, "purely jurisdictional" component as well as a separate, "waivable" exhaustion component.  *Id.* at 328 (internal quotation marks omitted).  The difference between the two is that "[t]he nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary," while "[t]he waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted."  *Id.*  The plaintiff in *Eldridge* had complied with the jurisdictional requirement, but not with the exhaustion requirement.  *Id.* at 329.  Noting that "Eldridge's constitutional claim [was] entirely collateral to his substantive claim of entitlement," *id.* at 330, and that Eldridge had "raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments," *id.* at 331, the Court held that Section 405(g)'s exhaustion requirement should be waived, *id.* at 330.

11

That analysis does not apply in this case, however.  Identifying collateral claims that may be subject to waiver have been limited to the exhaustion requirement of Section 405(g), not that provision's "purely jurisdictional" requirements.  *See, e.g.*, *Michner*, 2019 WL 3238582, at *3 ("courts appear to have consistently recognized that whether a claim is collateral has relevance only for exhaustion purposes" (citing *Bowen v. City of New York*, 476 U.S. 467, 483 (1986); *Ryan v. Bentsen*, 12 F.3d 245, 247–48 (D.C. Cir. 1993); and *Suarez v. Colvin*, 140 F. Supp. 3d 94, 98–100 (D.D.C. 2015)).  To be sure, in *Vencor Nursing Centers, LP v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999), a non-binding district court decision on which plaintiff relies, another Judge on this Court waived Section 405(g)'s special venue requirement, under *Eldridge*, as to collateral claims to the plaintiff's substantive claims for Medicare benefits.  Yet, *Vencor*'s holding is an "outlier," *Michner*, 2019 WL 3238582, at *3, and the reasoning in that case cannot be squared with the Supreme Court's decisions in *Salfi*, *Ringer*, and *Illinois Council*.  As these decisions make clear, the question of whether Section 405(g) applies is determined by whether a given claim "arises under" the Medicare Act, which, as explained *supra*, in Section III.A, is the case here.  The Supreme Court has, in applying Section 405(g), rejected "distinctions based upon … the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought."  *Ill. Council*, 529 U.S. at 13–14 (summarizing *Salfi* and *Ringer*).

In sum, once a claim is determined to "arise under" the Medicare Act such that Section 405(g) applies, *Eldridge* provides no basis for waiving the provision's jurisdictional requirements, including its venue requirement.

2. ***No Review Exception***

Plaintiff next turns to the "no review" exception to the requirements of Section 405(g), *see* Pl.'s Opp'n at 8–9, but that exception is also inapplicable here.

In *Illinois Council*, the Supreme Court established that the jurisdictional bar imposed by Section 405(h) should not apply in cases "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. This exception "applies not only when administrative regulations foreclose judicial review, but also when roadblocks practically cut off any avenue to federal court." *Am. Chiropractic Ass'n*, 431 F.3d at 816. That said, mere postponement or even lengthy delay is not enough to trigger the exception. The standard is a "*complete* preclusion of judicial review," not "added inconvenience or cost in an isolated, particular case." *Ill. Council*, 529 U.S. at 22–23 (italics in original); *see also Porzecanski*, 943 F.3d at 481–82 ("[a] party may not circumvent the channeling requirement 'by showing merely that postponement of judicial review would mean added inconvenience or cost in an isolated, particular case.'" (quoting *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 708 (D.C. Cir. 2011)).

The scope of the "no review" exception articulated in *Illinois Council* is illustrated in two D.C. Circuit decisions. In *Council for Urological Interests v. Sebelius*, "an association of doctor-owned equipment providers" challenged administrative regulations that "prevent[ed] its members from obtaining Medicare reimbursement." 668 F.3d at 705. The D.C. Circuit applied the *Illinois Council* exception, based on a finding that the Council could not seek administrative review of the relevant regulations because neither the association itself or its individual members qualified as "providers" of Medicare services. *Id*. at 707. Thus, "a whole category of affected parties—that is, joint ventures providing laser surgery equipment and services—ha[d] no way to

13

obtain review through Medicare Act channels." *Id*. at 708.  As a result, "invoking Section 405(h) would result … in the '*complete* preclusion of judicial review.'" *Id*. at 713 (quoting *Ill. Council*, 529 U.S. at 22–23) (italics in original).

By contrast, in *American Chiropractic Association, Inc. v. Leavitt*, 431 F.3d 812 (D.C. Cir. 2005), the D.C. Circuit declined to apply the "no review" exception where certain individual members of a chiropractic association could challenge, through the Medicare Act's administrative channels, referral requirements applicable to their Medicare reimbursements.  *See* 431 F.3d at 816–17 (finding that Count 4 of the complaint, "charging that the Secretary illegally permitted organizations such as HMOs to require, as a condition of coverage, that the enrollee obtain a referral," "would trigger the administrative process, at the end of which is judicial review of the Secretary's final decision," and was therefore "jurisdictionally barred").

Unlike in *Council for Urological Interests*, here plaintiff is indisputably eligible to bring an administrative challenge to the post-payment review process challenged in the case.  Indeed, plaintiff *has* brought such an administrative challenge.  Compl. ¶¶ 8, 39–41.  While plaintiff alleges that administrative review will result in significant delay, *see id*. ¶ 41, such delay—even as egregious as the three-year delay anticipated here—is insufficient to meet the *Illinois Council* standard.  Other courts confronted with "the colossal backlog in Medicare appeals" have consequently concluded that this delay does not trigger the exception, even when the resulting delay may result in the plaintiff going out of business.  *Family Rehab, Inc. v. Azar*, 886 F.3d 496, 505 (5th Cir. 2018); *see also Popkin v. Burwell*, 172 F. Supp. 3d 161, 170 (D.D.C. 2016) (same).  As the D.C. Circuit highlighted in *American Chiropractic Association*, "[t]he question therefore is whether the [plaintiff] could get its claims heard administratively and whether it could receive

judicial review after administrative channeling."  431 F.3d at 816.  The answer to that question

here is yes.  Accordingly, the "no review" exception does not apply.

### C.       Transfer is Appropriate

Under 28 U.S.C. § 1406, a district court may either dismiss a case for improper venue, or,

"if it be in the interest of justice, transfer such case to any district or division in which it could

have been brought."  28 U.S.C. § 1406; *see also Lemon*, 270 F. Supp. 3d at 139 (citing same).

"The decision whether a transfer or a dismissal is in the interest of justice … rests within the

sound discretion of the district court."  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789

(D.C. Cir. 1983).  "The interest of justice generally requires transferring such cases instead of

dismissing them," *Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010) (citing

*Goldlawr, Inc. v. Heiman*, 363 U.S. 463, 466–67 (1962)), but "dismissal may be appropriate

where there are obvious substantive problems with the plaintiff's claims," *id*.  Meanwhile,

"[n]othing in § 405(g) mandates dismissal when a case is initiated in the incorrect forum."

*Michner*, 2019 WL 3238582, at *4.

Here, defendants have not demonstrated "obvious substantive problems" sufficient to

merit dismissal.  In two footnotes, defendants posit in conclusory fashion that subject-matter

jurisdiction is lacking, but concede that this issue has not been briefed and "should be heard by

the court that has proper venue in this matter."  Defs.' Mem. at 2 n.1; *see also* Defs.' Reply at 2

n.1 ("Subject matter jurisdiction also does not exist in this case because Plaintiff failed to exhaust

its administrative remedies and obtain a final decision of the Secretary in accordance with the

limited waiver of sovereign immunity provided for in 42 U.S.C. § 405(g).  This defense will be

briefed if the case is brought in the proper venue.").  A determination that the interest of justice

does not merit transfer is generally reached only after a specific finding that dismissal would be

warranted even if venue were proper.  *See, e.g.*, *Laukus*, 691 F. Supp. 2d at 127–32 (specifically

finding lack of subject-matter jurisdiction); *Lemon*, 270 F. Supp. 3d at 140–45 (specifically

finding that plaintiff's complaint failed to state a claim upon which relief could be granted).

Here, by contrast, such a determination would be premature based on the current record.[4]  None

of the parties have briefed the merits of the jurisdictional defense alluded to by defendants and

such an opportunity is particularly necessary given the fact that, as explained *supra*, in Section

III.B.1, Section 405(g)'s exhaustion requirement is waivable.

Accordingly, transfer is in the "interest of justice," 28 U.S.C. § 1406, and the Court will

transfer the case to the District Court for the Eastern District of New York.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED, and this case will be

transferred to the District Court for the Eastern District of New York. An appropriate Order will

be entered contemporaneously with this Memorandum Opinion.


Date: June 11, 2020


                                         _____

                                         BERYL A. HOWELL
                                         Chief Judge

---

[4]      Plaintiff is silent regarding dismissal or transfer as an alternative preferred outcome and as to defendants'
suggestion that venue would be proper in the Eastern District of New York, where "plaintiff has its principal place
of business," Defs.' Mem. at 8.  Instead, plaintiff requests "should the Court believe the Complaint is insufficient in
any respect, … leave to amend the Complaint." Pl.'s Opp'n at 9 (citing FED. R. CIV. P. 15(a)(2)). That request is
denied.